IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WILLIE DAVIS,

                    Plaintiff,                  OPINION AND ORDER

     v.

                                               18-cv-77-wmc

THOMAS JAKUSZ and
TIM ZIEGLER,

                  Defendants.

*Pro se* plaintiff Willie Davis is proceeding on a First Amendment retaliation claim against Columbia Correctional Institution employees Thomas Jakusz and Tim Ziegler. Specifically, Davis claims that defendants violated his constitutional rights by treating his correction (white out) tape as contraband and punishing him for having it in his cell. Defendants have filed a motion for summary judgment (dkt #18), which the court will grant for the following reasons.[1]

UNDISPUTED FACTS[2]

Davis is currently incarcerated at Oakhill Correctional Institution. The events underlying his claim took place in 2012 when he was still incarcerated at Columbia, where defendants worked: Jakusz as a sergeant and Ziegler was a unit manager.

---

[1] Accordingly, the telephonic status and scheduling conference scheduled in this matter on January 31, 2022, will be cancelled.

[2] Unless otherwise noted, the following facts are deemed material and undisputed. Consistent with its practice, the court has drawn these facts from the parties' proposed findings and the evidence of record, when viewed in a light most favorable to plaintiff. *Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

This case concerns "correction tape," a product whose purpose is similar to correction liquid or white out, except in the form of adhesive strips.  When Davis arrived at Columbia from Redgranite Correctional Institution in 2010, he brought two correction tape "applicators" with him, which the property room staff did not remove as contraband when his property was first inventoried.  Davis purchased the tape for approximately $1 per applicator at another state correctional facility in Redgranite, Wisconsin, where it was allowable property.  (Dkt. #29-2 at 3.)  He apparently used the tape for his legal work.

Still, in addition to Division of Adult Institutions ("DAI") policy, each institution has its own list of allowable items that inmates may possess, with lower security level sites generally allowing more property items and maximum-security institutions like Columbia generally allowing fewer property items.  In this case, correction tape was neither listed as an allowable standard property item in DAI Policy 309.20.03 in effect in 2012, or in Columbia facility procedure specifying allowable non-standard personal property items, nor listed on Columbia's 2012 allowable property list.  (*See* dkt. ##21-1, 21-2, 24-1.)  Correction or correctable *ribbon*, used for making individual character corrections on typewriters and also at times called correction tape or lift-off tape, was an allowable standard property item per DAI policy in 2012.  (Dkt. #21-2 at 6.)  Although property room staff sometimes do not notice unapproved items when inventorying property coming into an institution, it is ultimately an inmate's responsibility to make sure he has only allowed property in his possession.

On March 20, 2012, a corrections officer conducted a random search of Davis's cell and found the tape applicators, one of which the officer took at the end of the search.  The

next day, Davis noticed one of his applicators was missing, and went to Sergeant Jakusz to ask for it back, arguing that it was an allowed property item.  Jakusz refused to return the tape, explaining that he had actually ordered the officer to take it.  After learning about the tape from the officer, Jakusz further attests that he confirmed his belief that inmates were not allowed to possess this item before deciding how to proceed.  (Dkt. #23 at 2.)  After Sergeant Jakusz's shift ended that day, Davis also complained to Unit Manager Ziegler about the missing tape, explaining that he had legitimately purchased the tape at Redgranite *and* been allowed to bring it into Columbia.  He further asserted that the same tape was available through the Department of Corrections (DOC) canteen catalogs used by all Wisconsin prisons.

In response, Manager Ziegler instructed Davis to fill out an "interview request form" about the situation as a reminder to Ziegler to address the dispute with Jakusz, who was due back to work two days later.  Davis did so the next day, March 21, again noting in his interview request that:  (1) he was "allowed into [Columbia] with Correction Cover up tape, from [Redgranite]"; (2) the tape was sold "in [DOC] catalogs"; and (3) Jakusz had taken his tape the day before.  (Dkt. #29-4 at 1.)  After Ziegler researched the issue, he replied the following day, March 22, that the tape was "[n]ot allowed per 309.20.03 nor on [Columbia's] canteen list."  (Dkt. #29-4 at 1.)  Ziegler then told another corrections officer to collect any other correction tape applicator from Davis's cell, at which time, Davis surrendered the second tape.  (Dkt. #29-6 at 1.)

Davis alleges that Ziegler told Jakusz about Davis's confiscation complaint on March 22, prompting these two defendants to "conspire" to issue a baseless conduct report

3

against him.  (Dkt. ##1 at 5, 29 at 3.)  In contrast, Jakusz attests that he does not recall *when* he spoke with Ziegler about the confiscation of Davis's correction tape applicators, nor whether or when Ziegler told him that Davis had complained about the tape.  (Dkt. #23 at 4.)  However, also on March 22, there appears to be no dispute that *Jakusz* completed a contraband property tag, which listed the two correction tape applicators to be banned -- one BIC brand and one Office Depot brand -- and that he issued Davis a conduct report for possession of contraband in violation of Wis. Admin. Code § DOC 303.47.[3]

As the sergeant, Jakusz had sole authority to issue conduct reports.  Jakusz attests that he issued the report in this case because he believed Davis's tape was contraband, not because Davis complained to Ziegler about the tape nor because Ziegler ordered him to issue the report.  (Dkt. #23 at 4.)  Jakusz further attests that given his other duties as sergeant, it was not uncommon for him to take a few shifts to write a conduct report, especially when he had to conduct additional research.  (Dkt. #23 at 3-4.)  Even so, Davis purports to dispute that it should have taken Jakusz two days to issue the conduct report because (1) "the research material is readily available to staff" and (2) the "limited inmate movement" at Columbia generally left "staff with a lot of free time after performing their duties."  (Dkt. #31 at 11.)

As a result, Davis complained in a March 25 letter to the warden about the incident and conduct report, and further asked that Ziegler not serve as the hearing officer on that

---

[3] This opinion references the December 2006 version of Wis. Admin. Code ch. DOC 303 in effect at all times relevant to this lawsuit.  (Dkt. #22-3.)

report.  The warden responded two days later, copying Ziegler and indicating that although hearing officers were "determined on a day by day basis," Ziegler would *not* preside over the hearing if he had been substantially involved in the underlying incident.  (Dkt. #29-11 at 2.)  Nonetheless, over Davis's objection, Ziegler oversaw Davis's disciplinary hearing on March 29, 2012.[4]

At the hearing itself, Davis admitted to possessing two correction tapes, which Ziegler held was neither "an allowable item" nor "sold through [the] canteen" at Columbia. (Dkt. #22-2 at 6.)  Davis asserts on summary judgment that Ziegler also remarked at the hearing that "this is what happens when inmates file complaints on [Ziegler's] staff."  (Dkt. #29 at 2.)  Ultimately, Ziegler found Davis guilty of possessing contraband, and he ordered Davis receive five days of cell confinement *and* the disposal of the tapes.  Davis's television and radio were also removed from his cell during his confinement.  Finally, Davis attests that while serving the five days, he could not leave his cell to go to the library, the cafeteria for meals, or to enjoy dayroom or recreation time.  (Dkt. #25 at 6.)

Davis appealed this decision as well, arguing that Ziegler should not have served as the hearing officer because he had been substantially involved in issuing the underlying conduct report.  The deputy warden agreed and ordered a re-hearing.  Moreover, at the re-hearing on October 16, 2012, the new hearing officer found Davis *not* guilty of possessing

---

[4] In addition to his retaliation claim, Davis initially sought leave to proceed on a Fourteenth Amendment due process claim, alleging that he had been denied an impartial hearing officer and that his property was confiscated without the process he was due.  (Dkt. #1 at 6-7.)  However, the court denied Davis leave to proceed on that claim because (1) his punishment was insufficient to implicate a liberty interest *and* (2) he had adequate post-deprivation remedies available for his property loss.  (Dkt. #9 at 8-9.)

contraband after finding that: (1) correction tape was in the DOC vendor catalog used by all Wisconsin prisons; and (2) Davis had purchased the tape while at Redgranite. The dismissed conduct report was then removed from Davis's disciplinary record.

OPINION

Here, a moving party is entitled to summary judgment if it can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must produce evidence that would permit a jury to reasonably find for the non-moving party in order to survive this motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In considering a summary judgment motion, a court views disputed facts in a light most favorable to the non-moving party.

Defendants seek summary judgment on plaintiff's retaliation claim. Specifically, plaintiff alleges that defendants issued him a baseless conduct report in retaliation for complaining about the confiscation of his correction tape, which plaintiff maintains was not contraband. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). However, to prove a retaliation claim under the First Amendment, plaintiff must show that: (1) he was engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in defendants' decision to take retaliatory action. *McGreal v. Village of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Once a plaintiff produces evidence

6

showing each of those elements, the burden shifts to the defendant to show "that the harm would have occurred anyway — that is, even if there had not been a violation of the First Amendment — and thus that the violation had not been a 'but for' cause of the harm, for which he is seeking redress." *See Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011). In other words, an otherwise meritorious retaliation claim fails if a defendant's actions were supported by a legitimate reason. *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015).

Apparently conceding that plaintiff's complaint about confiscation of tape constituted engaging in protected speech, defendants argue that plaintiff still cannot meet the second and third prongs of the retaliation analysis. Certainly, plaintiff's frustration at receiving a conduct report for property he was allowed to purchase and bring into Columbia is understandable, but defendants prevail even if plaintiff could shift the burden to them because the conduct report was supported by a legitimate reason. Starting with the *second prong*, defendants argue that the ultimate rejection of the conduct report and removal from plaintiff's disciplinary record means his treatment was not sufficiently adverse to support a retaliation claim. The test for the second prong is objective. The relevant inquiry is whether plaintiff has alleged facts suggesting that defendants' conduct would likely deter a person of ordinary firmness from continuing to engage in protected activity. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Moreover, as the Seventh Circuit noted, "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555; *see also Medina v. McDonald*, no. 10-cv-45-slc, 2010 WL 987819, at *1 (W.D. Wis. March 5, 2010) (noting that a single disciplinary charge that was later dismissed is not enough to support a retaliation claim because the

7

plaintiff did not suffer any harm).

However, in *Bridges*, "no actionable injury was inflicted as a result of the disciplinary charge alone," *Clark v. Dewitt*, No. 13-cv-3012, 2015 WL 9217141, at *2 (C.D. Ill. Dec. 17, 2015), and plaintiff *was* disciplined before the conduct report was dismissed. Still, defendants argue that the punishment was not sufficiently adverse to support a retaliation claim, relying on two district court decisions in support: *Bullocks v. Mummert*, No. 18-cv-23, 2019 WL 3082332, at *3 (S.D. Ohio July 15, 2019), *report and rec. adopted*, No. 18-cv-23, 2019 WL 3501483 (S.D. Ohio Aug. 1, 2019), and *Gonzalez v. Currie*, No. 13-cv-201, 2014 WL 222353, at *5 (S.D. Tex. Jan. 21, 2014). In each of these cases, the court deemed the prisoner's punishment -- a verbal reprimand and loss of recreation time for five days in *Gonzalez*, and a loss of recreation for 14 days in *Bullocks* -- too minimal to sustain a retaliation claim. However, neither of these cases involve total cell confinement, including loss of recreation, dayroom, and library time, and loss of electronics.

Certainly, the Seventh Circuit has recognized that de minimus deprivations amounting to mere inconveniences do not support a retaliation claim. *See Long v. Hammer*, 727 F. App'x 215, 217 (Mem) (7th Cir. June 15, 2018) (verbal harassment and requiring a prisoner to sign up for extra library time were insufficient to support a retaliation claim); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise"). While the court has little trouble concluding that the loss of approximately $2 in correctional tape is a de minimis deprivation, a reasonable fact finder could nevertheless

8

find the combination of five days' cell confinement and loss of electronics sufficiently adverse to support a retaliation claim, especially since plaintiff had to go through the appeals process and a re-hearing before the charge against him was dismissed. *See Boyd v. Heil*, No. 17-cv-209-wmc, 2020 WL 6262125, at *21 (W.D. Wis. Oct. 23, 2020) (a reasonable jury could find that the combination of deprivation of mail, a 15-day loss of recreation, and having to go through the appeals process before disciplinary charges were dismissed a sufficient deterrent).

That said, even if a jury could reasonably infer Jakusz knew that plaintiff had complained to Ziegler about the tape before he issued the conduct report, as alleged, plaintiff has not created a genuine issue of material fact regarding whether the report was motivated by retaliatory intent. To buttress his claim, plaintiff relies heavily on suspicious timing, emphasizing that the conduct report was issued two days after the discovery of the tape, and only a day after he complained to Ziegler. (Dkt. #27 at 2-3, 11.) If the conduct report was not retaliatory, plaintiff reasons, Jakusz would have issued it right away after discovering the correction tape, rather than right after plaintiff complained to the unit manager. Still, timing alone is insufficient to prove an unlawful motive. *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second."). And while Ziegler presided over the initial hearing and imposed punishment on plaintiff, plaintiff does not dispute that hearing officers are determined on a day-by-day basis, so there is no evidence to suggest Ziegler would have even known when the report was issued, much less he would also be

9

presiding over the hearing.

Moreover, defendants offered a logical explanation for the delay, which plaintiff has not disputed. On the contrary, given his other, varied duties as sergeant, Jakusz attests that it can take a few days to write and process a conduct report, especially where, as here, he needed to do some additional research. Further, Jakusz attests that he had authority independent of Ziegler to issue conduct reports. In response, plaintiff offers only speculation that "the research material is readily available to staff" and the "limited inmate movement" at Columbia may have left "staff with a lot of free time after performing their duties," so Jakusz should not have taken two days to issue the report. (Dkt. #31 at 11.) Regardless, plaintiff is in no position to know how the administration of conduct reports actually worked at Columbia beyond his own anecdotal observation. *See* Fed. R. Evid. 602 (a witness at trial can only testify to matter about which he or she has personal knowledge). Plaintiff's mere speculation regarding defendants' allegedly retaliatory motives cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (speculation regarding officers' motives cannot overcome contrary evidence that actions were benign); *Parrilla v. Beahm*, No. 17-c-841, 2018 WL 3717026, at *6 (E.D. Wis. Aug. 3, 2018) (same). Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.

In any event, as to the *third prong* of a retaliation claim the issuance of the conduct report was supported by a legitimate purpose. Although plaintiff may never have used his tape inappropriately, keeping contraband out of prisons generally promotes and ensures staff and inmate safety. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989)) ("Courts must

10

"afford[ ] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."). While correctional tape was apparently permitted at Redgranite, was not removed as contraband from plaintiff's property when he arrived at Columbia, and was available in the DOC-wide vendor catalogs, there is no dispute that in 2012, this item was *not* listed as an allowable standard property item in Division of Adult Institutions (DAI) Policy 309.20.03, neither is it in Columbia facility procedure specifying allowable, non-standard personal property items nor on Columbia's allowable property list.  (*See* dkt. ##21-1, 21-2, 24-1.) Finally, there is evidence that typewriter correction ribbon was permitted, but that is not the same product as the correction tape that caused the conduct report to issue here.  (Dkt. #21-2 at 6.)

Accordingly, Jakusz's conduct report had a legitimate basis.  Plaintiff again argues in response that defendants got it wrong -- underscoring that the charge was dismissed on re-hearing -- but the second hearing officer did not base his not guilty finding on the fact that correction tape was per se allowable property at Columbia.  (Dkt. #22-2 at 10.)  And regardless of the correctness of this second or initial disposition of that report, as this court has recently explained, the "bottom line" for retaliation is "whether there was a legitimate reason for [defendants] to pursue the conduct report" in the first instance or at least this court must defer to the DOC's judgment when reasonable.  *See Turner v. Boughton*, No. 17-cv-203-jdp, 2021 WL 1200597, at *17 (W.D. Wis. Mar. 30, 2021) (even if defendants were ultimately wrong about the true purpose of the plaintiff's letters, defendants had a legitimate reason to issue the conduct report and were thus entitled to summary judgment).

11

Defendants "do not violate the Constitution merely by making errors in disciplinary proceedings." *Id.* (citing *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016) (adverse act because of "mistaken belief" does not violate First Amendment); *Williams v. Brown*, No. 17-cv-11-bbc, 2017 WL 782958, at *2 (W.D. Wis. Feb. 28, 2017) (no First Amendment retaliation claim against officer who gave conduct report for prisoner who failed to give officer information about an assault, "even if it is true that [the prisoner] had no information to give and [the officer] believed mistakenly that [the prisoner] was lying, a mistake is not a First Amendment violation")).

Plaintiff's evidence might raise a dispute about whether the tape should have been considered contraband at Columbia, or whether all staff understood that it was contraband. However, plaintiff does not adduce evidence to show that defendants, whose responses to his inquiries rely on the absence of the tape from allowable property lists, did not sincerely believe it was contraband at Columbia, or had any reason to know it might not be. Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.[5]

---

[5] Because of this ruling, it is therefore unnecessary to address defendants' alternative argument that they are entitled to qualified immunity. As a general matter, plaintiff has a clearly established First Amendment right to grieve conditions of confinement, including the mistreatment of personal property, without recrimination. *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010); *see also Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (because retaliation against constitutionally protected conduct is actionable regardless of whether defendant's actions independently violate the constitution, unit manager who allegedly misclassified an inmate "would have been on notice that any retaliation, whatever its shape, could give rise to liability"). Defendants base their immunity claim on their arguments that plaintiff's punishment was not sufficiently adverse and not every reasonable official at Columbia would have believed plaintiff's tape was allowable property. (Dkt. #19 at 13.) The qualified immunity analysis thus turns on the merits as well.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #18) is GRANTED.

2) The clerk of court is directed to issue judgment in defendants' favor and to close this case.

Entered this 25th day of January, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

13